## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MYWEDDING, LLC | : |
|               Plaintiff, | : |
|    v. | : |
|  | : |
| LINDSAY M. CARROLL | :    CIVIL ACTION NO._____ |
| and | : |
|  | : |
| WEDDINGWIRE, INC. | : |
|             Defendants. | : |
|  | : |

### VERIFIED COMPLAINT

Plaintiff, MyWedding, LLC, by and through its undersigned counsel, hereby files its Verified Complaint against Defendants Lindsay M. Carroll and WeddingWire, Inc. and states as follows:

### Parties

1.      MyWedding, LLC is a Colorado limited liability company, with its principal place of business at 4600 Castleton Way, Suite 210, Castle Rock, Colorado, 80109.

2.      Defendant Lindsay M. Carroll ("Defendant Carroll") is an adult individual who, upon information and belief, is a citizen and resident of Pennsylvania.

3.      Upon information and belief, Defendant WeddingWire, Inc. ("Defendant WeddingWire"), is a Delaware corporation, with a principal place of business at Two Wisconsin Circle, Third Floor, Chevy Chase, Maryland 20815.

4.      Plaintiff seeks immediate relief from Defendant Carroll's violation of her noncompetition and non-solicitation agreement, which is causing immediate and irreparable harm as more fully set forth below.

**Jurisdiction and Venue**

5.     This court has jurisdiction over the claims asserted in this Complaint pursuant to 28 U.S.C. § 1332 in that Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

6.     Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(a) because Defendant Carroll is subject to personal jurisdiction in the Eastern District of Pennsylvania.

**Factual Allegations**

7.     Plaintiff provides online wedding planning guides where couples can find information about, *inter alia*, wedding photographers, wedding reception facilities, wedding ceremony sites, wedding cakes, and wedding dresses.

8.     Defendant Carroll began working for MyWedding, LLC, as an Advertising Consultant on or about March 16, 2011.

9.     As an Advertising Consultant, Defendant Carroll was responsible for selling online advertising to wedding vendors.

10.     As a condition to her employment with MyWedding, LLC, Defendant Carroll was required to execute a Proprietary Information and Inventions Agreement (the "PIIA"). A true and correct copy of the PIIA is attached hereto as Exhibit "A."

11.     The PIIA contains non-competition and non-solicitation clauses, which provide, in pertinent part, as follows:

> During the term of my employment by or consultancy with the Company and for one (1) year after my employment by or consultancy with ceases for any reason other than because of the Company's financial hardship, I will not, without the Company's prior written consent, directly or indirectly be employed by or involved with any business

> developing or exploiting any products or services that are directly and materially competitive with products or services (a) being commercially developed or exploited by the Company during my employment or consultancy and (b) on which I worked or about which I learned Proprietary Information during my employment by or consultancy with the Company.
>
> During the term of my employment by or consultancy with the Company and for one (1) year after my employment or consultancy ceases, I will not personally or through others (a) recruit, solicit or induce in any way any employee, advisor or consultant of the Company to terminate his or her relationship with the Company, or (b) solicit any client or customer of the Company to become clients or customers of another entity or association directly competitive to the business in which the Company is now involved or becomes involved.

*See* Ex. A at ¶¶11-12

12.     The PIIA also contains provisions regarding the confidential nature of Plaintiff's company documents, which require, *inter alia*, that Defendant Carroll return all such company documents upon the termination of Defendant Carroll's employment with Plaintiff. *See* Ex. A at ¶ 4(b).

13.     On February 25, 2013, Defendant Carroll sent a formal letter of resignation to Plaintiff with an effective resignation date of March 8, 2013. A true and correct copy of Defendant Carroll's February 25, 2013 resignation letter is attached hereto as Exhibit "B."

14.     Defendant Carroll's resignation came soon after Defendant WeddingWire solicited Plaintiff's employees during a cocktail reception in or around October 2012.

15.     Plaintiff recently learned that Defendant Carroll is working for Defendant WeddingWire.

16.     Defendant WeddingWire is in direct competition with Plaintiff.

17.     Specifically, Defendant WeddingWire operates an online marketplace that connects merchants with engaged couples and party planners.

18.     Because Defendant WeddingWire is a direct competitor, Plaintiff believes and therefore avers that Defendant Carroll is providing services to Plaintiff's clients.

19.     Defendant Carroll's employment by Defendant WeddingWire is in violation of the non-competition and non-solicitation provisions contained in Paragraphs 11 and 12 of the PIIA.

20.     Defendant Carroll is intimately familiar with Plaintiff's highly confidential and proprietary information about Plaintiff's operations and customers, and its cost and pricing strategies for the services she provided ("Proprietary Information).

21.     Plaintiff believes and therefore avers that it will not be possible for Defendant Carroll to perform her duties in the course of her employment by Defendant WeddingWire without drawing upon and making use of the Proprietary Information in violation of her duty of non-disclosure set forth in the PIIA. *See* Ex. A at ¶ 3.

22.     Further, Defendant improperly retained Plaintiff's proprietary and confidential information, including documents relating to retaining new clients, which were subsequently provided to Defendant WeddingWire.

23.     Defendant Carroll's conduct has caused and continues to cause financial harm to Plaintiff, including, but not limited to, loss of profits.

24.     On information and belief, Defendant WeddingWire was aware of the terms of the PIIA signed by Defendant Carroll.

25.     Nevertheless, Defendant WeddingWire induced Defendant Carroll to breach the PIIA by employing her in violation of the terms contained therein.

4

26.     Defendant WeddingWire's conduct has caused and continues to cause irreparable harm to Plaintiff, including, but not limited to, loss of the benefit of Plaintiff's specialized training of its employee, loss of goodwill, damage to client relationships, and disclosure of Proprietary Information.

27.     On October 8, 2013, counsel for Plaintiff sent Defendants a formal demand letter in which Plaintiff requested that Defendants immediately cease and desist from any activity in violation of the PIIA.  A true and correct copy of counsel's October 8, 2013 correspondence is attached hereto as Exhibit "C."

28.     Defendants' counsel subsequently contacted Plaintiff's counsel to discuss the Defendant Carroll's employment with Defendant WeddingWire.

29.     During one conversation between counsel, on or about November 5, 2013, counsel for Defendant WeddingWire produced two of Plaintiff's confidential documents that it had received from Defendant Carroll.

30.     Despite communications between counsel, Defendants refused to cease their unlawful conduct.

31.     Unless Defendant Carroll is enjoined from persisting in her unlawful conduct, Plaintiff will be irreparably harmed, in that Defendant Carroll will continue to violate the terms of her PIIA by performing services for Plaintiff's clients; by soliciting Plaintiff's customers; by reducing the amount of business to Plaintiff; and/or by the disclosure of Plaintiff's Proprietary Information.

32.     As a consequence therefore, Plaintiff will lose clients, customers, goodwill and competitive advantage and will suffer incalculable damage to its existing and prospective relations with its clients and customers.

33.    Unless Defendant WeddingWire is enjoined from persisting in its unlawful conduct, Plaintiff will be irreparably harmed in that Defendant WeddingWire will continue to recruit Plaintiff's employees in violation of the employees' agreements and to seek Plaintiff's trade secrets.

**COUNT ONE**
**Injunctive Relief**
**(Plaintiff v. All Defendants)**

34.    Plaintiff repeats and incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein.

35.    By virtue of the allegations set forth herein, Plaintiff has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Defendants.

36.    Unless Defendants are temporarily, preliminarily, and/or permanently enjoined from the foregoing conduct, Plaintiff will be irreparably harmed by:

a.  Disclosure of organizational documents, clients' records and financial dealings and other confidential information which are solely the property of Plaintiff and its clients;

b.  Loss of confidentially of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

c.  Loss of personnel, damage to office stability, and a threat to the enforcement of reasonable policies and procedures aimed at protecting Plaintiff from the above mentioned unlawful activities;

d.  Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable; and

e.  Plaintiff has no adequate remedy at law.

**WHEREFORE**, Plaintiff respectfully requests that:

1.  A Temporary Restraining Order and/or Preliminary Injunction issue immediately, enjoining Defendants, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee and/or representative of Defendants, until hearing and thereafter until further Order of this Court, from:

a.  Defendant Carroll directly or indirectly being employed by or involved with any business that develops or exploits any products or services that are directly and materially competitive with Plaintiff's products or services;

b.  using, disclosing, disseminating, or transmitting for any purpose, any and all of Plaintiff's proprietary and confidential information improperly obtained by Defendants, including, but not limited to customer information, names and addresses; and

c.  destroying, erasing, or otherwise making unavailable for further proceedings in this matter, any records, telephonic records, or documents (including data or information maintained in computer media) in Defendants' possession, custody, or control which were obtained from or contain information derived from any of Plaintiff's proprietary and confidential records or information, or which relate to any of the events alleged in the Complaint in this action; and

d.  Any and all other such acts as this Court deems appropriate for injunctive relief.

2.  Defendants, and anyone acting in concert or participation with Defendants, specifically including Defendants' counsel and any agent, employee or representative of Defendants, be further ordered to within forty-eight (48) hours of notice to Defendants or their

counsel of the terms of the Court's Order: a) identify and return to Plaintiff's counsel any and all proprietary and confidential records, documents, materials and property and/or other types of information pertaining to Plaintiff, whether in original, copied, handwritten, computerized (including computer software, disks, computer hard drive and/or any other type of computer or digital information storage device) or memorialized in any other form; and b) identify any and all individuals, companies or organizations to whom Defendants disclosed, disseminated, or transmitted for any purpose, any such documents and/or information.

3.      Any and all proprietary and confidential information within the possession, custody or control of Defendants that is contained in any computerized form, including on computer software, disks, computer hard drive, and/or any other type of computer or digital information storage device, returned pursuant to paragraph 2 above be permanently deleted by Plaintiff's representative.  Such proprietary and confidential information shall be permanently deleted, if possible without affecting any other information or software on the computer. Defendants, and anyone acting in concert with Defendants, are precluded from reconstituting or in any way restoring any proprietary and confidential information deleted pursuant to this paragraph and returned to Plaintiff pursuant to paragraph 2 above.

4.      Plaintiff be awarded the costs of suit and attorney's fees be awarded; and

5.      Plaintiff be awarded such other and further relief be awarded as the Court deems just and equitable.

## COUNT TWO
### Breach of Contract
### (Plaintiff v. Defendant Carroll)

37.      Plaintiff repeats and incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein.

38.     By engaging in the conduct alleged above, Defendant Carroll breached and continues to breach the PIIA.

39.     Plaintiff has suffered and will continue to suffer damages, including, but not limited to, loss of profits, as a direct result of Defendant Carroll's breach of the PIIA.

WHEREFORE, for all of the foregoing reasons, Plaintiff respectfully requests this Court to enter judgment in its favor, including but not limited to, injunctive relief as set forth above, compensatory damages, and any such other and further relief as the Court deems just and equitable.

**COUNT THREE**
**Conversion**
**(Plaintiff v. All Defendants)**

40.     Plaintiff repeats and incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein.

41.     The foregoing conduct of Defendants constitutes a conversion of Plaintiff's proprietary and confidential business information, Plaintiff's property, and Plaintiff's proprietary rights and interests.

42.     As a result of Defendants' unlawful conversion, Plaintiff has suffered and/or will continue to suffer irreparable loss, including damage to business reputation and good will and other damages.

43.     Unless Defendants are restrained and enjoined from converting Plaintiff's property to their own unlawful use, Plaintiff will continue to suffer immediate and irreparable injury and harm for which there is no adequate remedy at law.

WHEREFORE, for all of the foregoing reasons, Plaintiff respectfully requests this Court to enter judgment in its favor, including but not limited to, injunctive relief as set forth above,

compensatory damages, and any such other and further relief as the Court deems just and equitable.

## COUNT FOUR
### Violation of Duty of Loyalty
### (Plaintiff v. Defendant Carroll)

44.     Plaintiff repeats and incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein.

45.     During the time that she was employed at Plaintiff, Defendant Carroll violated her duty of loyalty and did not act in Plaintiff's best interests.

46.     Defendant Carroll also violated her duty of loyalty to Plaintiff by failing to act for the furtherance and advancement of her employer, solely for the benefit of her employer.

47.     Defendant Carroll specifically violated her duty of loyalty to Plaintiff by improperly retaining Plaintiff's proprietary and confidential information which, upon information and belief has been subsequently disseminated to third parties.

48.     As a direct and proximate result thereof, Plaintiff has been injured and sustained irreparable harm and damages.

WHEREFORE, for all of the foregoing reasons, Plaintiff respectfully requests this Court to enter judgment in its favor, including but not limited to, injunctive relief as set forth above, compensatory damages, and any such other and further relief as the Court deems just and equitable.

## COUNT FIVE
### Tortious Interference with Contractual Relations
### (Plaintiff v. Defendant WeddingWire)

49.     Plaintiff repeats and incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein.

10

50.     Upon information and belief, Defendant WeddingWire had knowledge of the PIIA between Plaintiff and Defendant Carroll, including but not limited to the noncompetition and non-solicitation provisions contained therein.

51.     Defendant WeddingWire, without legal justification, improperly interfered with Plaintiff's contractual relationship with its Defendant Carroll, inducing Defendant Carroll to breach and/or continue to breach the PIIA.

52.     Defendant WeddingWire's conduct has harmed Plaintiff, in that Defendant Carroll has breach and will continue to breach the PIIA.

WHEREFORE, for all of the foregoing reasons, Plaintiff respectfully requests this Court to enter judgment in its favor, including but not limited to, injunctive relief as set forth above, compensatory damages, attorneys' fees, and any such other and further relief as the Court deems just and equitable.

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

Paul Lancaster Adams (Pa. I.D. No. 72222)
1735 Market Street, Suite 3000
Philadelphia, Pennsylvania  19103
Telephone:  (215) 995-2800
Facsimile:  (215) 995-2801

*Attorneys for Plaintiff*

Dated:  November 18, 2013

## VERIFICATION

I, Woody Pastorius, am the President and Chief Executive Officer of MyWedding, LLC, and I am authorized to make this verification on its behalf. I hereby verify that the matters set forth in the foregoing Verified Complaint are true and correct to the best of my knowledge, information and belief.

BY: _____
Woody Pastorius

Dated: November 12, 2013

16409255.2

# EXHIBIT "A"

MYWEDDING, LLC
PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT

In consideration of my employment or consultancy with MyWedding, LLC, a Colorado limited liability company ("Company"), and the compensation now and hereafter paid to me by Company, I, _Lindsay Carroll_____, hereby agree as follows:

1.    Whenever used in this Agreement, the following terms will have the following meanings:

   (a)   "Agreement" means this Proprietary Information and Inventions Agreement.

   (b)   "Invention(s)" means discoveries, developments, concepts, designs, ideas, improvements, inventions and/or works of authorship (including, but not limited to, interim work product, modifications and derivative works), whether or not patentable, copyrightable or otherwise legally protectable. This includes, but is not limited to, any new product, machine, article of manufacture, method, procedure, process, formulation, algorithm, computer program, software, technique, use, equipment, device, apparatus, system, compound, composition of matter, design or configuration of any kind, or any improvement thereon.

   (c)   "Proprietary Information" means information or physical material not generally known or available outside the Company or information or physical material entrusted to the Company by third parties. This includes, but is not limited to, Inventions, confidential knowledge, trade secrets, copyrights, product ideas, techniques, processes, formulas, algorithms, software, mask works and/or any other information of any type relating to documentation, data, schematics, flow charts, mechanisms, research, development, engineering, improvements, business processes, installation, marketing, forecasts, sales, pricing, customers, the salaries, duties, qualifications, performance levels and terms of compensation of other employees, and/or cost or other financial data concerning any of the foregoing or the Company and its operations. Proprietary Information may be contained in material such as drawings, samples, procedures, specifications, reports, studies, analyses, customer or supplier lists, budgets, cost or price lists, compilations or computer programs, or may be in the nature of unwritten knowledge or know-how.

   (d)   "Company Documents" means documents or other media that contain Proprietary Information or any other information concerning the business, operations or plans of the Company, whether such documents have been prepared by me or others. Company Documents include, but are not limited to, blueprints, drawings, photographs, charts, graphs, notebooks, customer lists, computer disks, tapes or printouts, sound recordings and other printed, typewritten or handwritten documents.

   (e)   "Services" means any and all services I have provided to the Company prior and subsequent to the effective date of this Agreement, which may include software- or hardware-related development, design, consulting, testing, project management, marketing, support and related services for Company on an as needed basis, whether or not set forth in a work order.

   (f)   "Work Product" means, without limitation, any and all Company Documents, Services, Inventions, Proprietary Information, and any and all of the following which results, arise or occurs as a result of or from the Services, namely, any computer program, operating system, applications system, firmware, interface or software deliverable of any nature, whether operational, under development or inactive, regardless of whether licensed or distributed as a service through a hosted arrangement or otherwise; all object code, source code, data files, designs, specifications, rules, definitions or methodology derived from the foregoing and any derivations, updates, enhancements, modifications, improvements and customizations of any of the foregoing; processes, know-how, operating procedures, methods, databases, and

technical manuals, user manuals, reference designs and other documentation thereof, whether in machine readable form, programming language or any other language or symbols and whether stored, encoded, recorded or written on disk, tape, film, memory, device, paper or other media of any nature; and all intellectual property embodied in all of the foregoing.

2.    I understand that the Company is engaged in a continuous program of research, development, marketing and sales.   I also recognize that the Company possesses or has rights to Proprietary Information, Inventions, and Company Documents (including certain information developed and to be developed by me during my employment by or consultancy with the Company) which has commercial value in the Company's business.

3.    <u>Confidentiality</u>.  I understand and agree that my employment by or consultancy with the Company creates a relationship of confidence and trust between me and the Company with respect to (a) all Proprietary Information and (b) the confidential information of any other person or entity with which the Company has a business relationship and is required by terms of an agreement with such entity or person to hold such information as confidential.  At all times, both during my employment by or consultancy with the Company and after its termination (regardless of the reason for such termination), I will keep in confidence and trust all such information, and I will not use or disclose any such information without the prior written consent of the Company, except as may be necessary in the ordinary course of performing my duties to the Company.

4.    In addition, I hereby agree as follows:

(a)    All Proprietary Information shall be the sole property of the Company and its assigns, and the Company and its assigns shall be the sole owner of all trade secrets, patents, copyrights and other rights in connection therewith. I hereby assign to the Company any rights I may presently have or I may acquire in such Proprietary Information.

(b)    All Company Documents, apparatus, equipment and other physical property, whether or not pertaining to Proprietary Information, furnished to me by the Company or produced by me or others in connection with my employment by or consultancy with the Company shall be and remain the sole property of the Company.  I shall return to the Company all such Company Documents, materials and property as and when requested by the Company, excepting only (i) my personal copies of records relating to my compensation and benefits, (ii) if applicable, my personal copies of any materials evidencing shares of the Company's capital stock granted to me and (iii) my copy of this agreement (my "Personal Documents").  Even if the Company does not so request, I shall return all such Company Documents, materials and property upon termination of my employment by or consultancy with by me or the Company for any reason, and, except for my Personal Documents, I will not take with me any such Company Documents, material or property or any reproduction thereof upon such termination.

(c)    I will promptly disclose to the Company, or any persons designated by it, all Inventions relating to the business of the Company, made or conceived, reduced to practice or learned by me, either alone or jointly with others, prior to the term of my employment by or consultancy with the Company and for six (6) months after my employment by or consultancy with the Company ceases.

(d)    During the term of my employment by or consultancy with the Company, including any period prior to the effectiveness of this Agreement, all Inventions that I conceive, reduce to practice, develop or have developed (in whole or in part, either alone or jointly with others) in connection with my employment or consultancy (or anticipated employment or consultancy) with Company shall be the sole property of the Company and its assigns to the maximum

extent permitted by law (and to the fullest extent permitted by law shall be deemed "works made for hire"), and the Company and its assigns shall be the sole owner of all patents, copyrights, trademarks, trade secrets and other rights in connection therewith. I hereby assign to the Company any rights that I may have or acquire in such Inventions. I agree that any Invention required to be disclosed under paragraph (c) above within six (6) months after the term of my employment by or consultancy with the Company ceases shall be presumed to have been conceived during my employment by or consultancy with the Company. I understand that I may overcome the presumption by showing that such Invention was conceived after the termination of my employment by or consultancy with the Company.

(e)     During or after my employment by or consultancy with the Company, upon the Company's request and at the Company's expense, I will execute all papers in a timely manner and do all acts necessary to apply for, secure, maintain or enforce patents, copyrights, trademarks and any other legal rights in the United States and foreign countries in Inventions owned by and/or assigned to the Company under this Agreement, and I will execute all papers and do any and all acts necessary to assign and transfer to the Company or any person or party to whom the Company is obligated to assign its rights, my entire right, title and interest in and to such Inventions. This obligation shall survive the termination of my employment by or consultancy with the Company, but the Company shall compensate me at a reasonable rate after such termination for time actually spent by me at the Company's request on such assistance. In the event that the company is unable for any reason whatsoever to secure my signature to any document reasonably necessary or appropriate for any of the foregoing purposes, (including but not limited to renewals, extensions, re-registrations, continuations, divisions or continuations in part), I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agents and attorneys-in-fact to act for and in my behalf and instead of me, but only for the purpose of executing and filing any such document and doing all other lawfully permitted acts to accomplish the foregoing purposes with the same legal force and effect as if executed by me.

(f)     To advise the Company regarding other demands on my time and attention, I will disclose to Company (such disclosure to be held in confidence by the Company) the nature and scope of any other business activity in which I am or become engaged during the term of my employment by or consultancy with the Company. During the term of my employment by or consultancy with the Company, I will not engage in any other business activity related to the Company's business or its actual or demonstrably anticipated research and development.

5.     <u>Work Made for Hire</u>. The Work Product is solely owned by Company and considered "Work Made For Hire" (as such is defined under the U.S. Copyright Laws) by me for Company and, as such, is owned by and for the sole benefit of Company. I acknowledge and agree that I have no rights in the Work Product, and I hereby assign to the Company all of my rights in the Work Product and any and all ideas, processes, technical information, and other data and materials resulting from Work Product provided by me to Company. Company owns all United States and international patent rights, copyrights, trade secrets, and other intellectual property rights embodied in the Work Product and all proprietary rights associated therewith. In the event that it should be determined that any of the Work Product does not qualify as a "Work Made for Hire," I shall and hereby do assign to Company for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, all right, title, and interest that I may possess in such Work Product and the underlying materials including, but not limited to, all copyright, patent, and other proprietary rights relating thereto.

6.     As a matter of record I attach hereto as <u>Exhibit A</u> a complete list of all Inventions (including patent applications and patents) relevant to the business of the Company which have been made, conceived, developed or first reduced to practice by me, alone or jointly with others, prior to my employment by or consultancy with the Company and that I desire to remove from the operation of this Agreement, and I

represent and warrant that such list is complete. If no such list is attached to this Agreement, I represent that I have no such Inventions at the time of signing this Agreement. If, in the course of my employment by or consultancy with the Company, I use or incorporate into a product or process an Invention not covered by Paragraph 4(d) of this Agreement in which I have an interest, the Company is hereby granted a nonexclusive, fully paid-up, royalty-free, perpetual, world-wide license of my interest to use and sublicense such Invention without restriction of any kind.

7.     Applications for Copyrights & Patents.     At any time during my engagement and thereafter, I will execute any proper oath or verify any proper document in connection with carrying out the terms of this Agreement. If because of my incapacity or for any other reason Company is unable to secure my signature to apply for or pursue any application for or registration of any U.S. or foreign patent or copyright covering Inventions assigned to Company as stated above, I hereby irrevocably appoint Company and its duly authorized officers and agents as my agent and attorney in fact, to act in my stead to execute and file any such applications and to do all other lawful acts to further the prosecution, issuance, maintenance or enforcement of U.S. and foreign patent applications, patents and copyrights thereon with the same legal force and effect as if executed by me. In furtherance of this Agreement, I will testify at Company's request and expense in any legal proceeding arising during or after my engagement.

8.     I represent and warrant that my execution of this Agreement, my employment by or consultancy with the Company and my performance of my proposed duties to the Company in the development of its business will not violate any obligations that I may have to any former employer, or other person or entity, including any obligations to keep confidential any proprietary or confidential information of any such employer, person or entity. I have disclosed to Company any such agreements that may bear on my engagement with Company. In the course of performing my duties for the Company, I will not utilize any proprietary or confidential information of any former employer. I have not entered into, and I will not enter into, any agreement which conflicts with or would, if performed by me, cause me to breach this Agreement.

9.     I understand that this Agreement is not an employment agreement or consultancy agreement, and shall not alter the "at will" nature of my employment or consultancy (as applicable).

10.     This Agreement shall be effective as of the first day of my employment by or consultancy with the Company and the obligations hereunder will continue beyond the termination of such employment or consultancy and will be binding on my heirs, assigns and legal representatives. This Agreement is for the benefit of the Company, its successors and assigns (including all subsidiaries, affiliates, joint ventures and associated companies) and is not conditioned on my employment by or consultancy with the Company for any period of time or compensation therefore. I agree that the Company is entitled to communicate any obligations under this Agreement to any future employer or potential employer of mine.

11.     During the term of my employment by or consultancy with the Company and for one (1) year after my employment by or consultancy with ceases for any reason other than because of the Company's financial hardship, I will not, without the Company's prior written consent, directly or indirectly be employed by or involved with any business developing or exploiting any products or services that are directly and materially competitive with products or services (a) being commercially developed or exploited by the Company during my employment or consultancy and (b) on which I worked or about which I learned Proprietary Information during my employment by or consultancy with the Company.

12.     During the term of my employment by or consultancy with the Company and for one (1) year after my employment or consultancy ceases, I will not personally or through others (a) recruit, solicit or induce in any way any employee, advisor or consultant of the Company to terminate his or her relationship with the Company, or (b) solicit any client or customer of the Company to become clients or customers of another entity or association directly competitive to the business in which the Company is now involved or becomes involved.

13.    If during the term of my employment by or consultancy with the Company and for one (1) year after my employment or consultancy ceases, I seek work elsewhere, I will provide a copy of this Agreement to any persons or entities by whom I am seeking to be hired before accepting employment with or engagement by them.

14.    I acknowledge that the consideration set forth above in the first paragraph of this Agreement is good, valuable, and sufficient consideration for my entering into both my employment or consultancy agreement and this Agreement, and that I have received such consideration in exchange for my covenants and undertakings herein.

15.    I acknowledge that any violation of this Agreement by me will cause irreparable injury to the Company and I agree that the Company will be entitled to seek extraordinary relief in court, including, but not limited to, temporary restraining orders, preliminary injunctions and permanent injunctions without the necessity of posting a bond or other security and without prejudice to any other rights and remedies that the Company may have for a breach of this Agreement.

16.    I agree that any dispute in the meaning, effect or validity of this Agreement shall be resolved in accordance with the laws of the State of Colorado without regard to the conflict of law provisions thereof. Venue and jurisdiction of any claim or action involving this Agreement or my employment by or consultancy with the Company shall exist exclusively in the state and federal courts in Denver County, Colorado, unless injunctive relief is sought by the Company and, in the Company's judgment, may not be effective unless obtained in some other venue. I further agree that if one or more provisions of this agreement are held to be unenforceable under applicable Washington law, such provision(s) shall be excluded from this Agreement and the balance of the Agreement shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

I HAVE READ AND FULLY UNDERSTAND THIS AGREEMENT. THIS AGREEMENT MAY ONLY BE MODIFIED BY A SUBSEQUENT WRITTEN AGREEMENT EXECUTED BY ME AND THE PRESIDENT OF THE COMPANY.

Name: _Lindsay Carroll_

Date: _3/14/11_

Accepted and Acknowledged:

MYWEDDING LLC.

Name: _Edward W Fasnaus_

Title: _Pres/CEO_

## EXHIBIT A
## TO MYWEDDING LLC
## PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT

The following is a complete list of all inventions or improvements relevant to the subject matter of my employment or consultancy with MyWedding, LLC, a Colorado limited liability company (the "Company"), which term includes the Company's subsidiaries, any of its affiliates and any successors thereto), that have been made or conceived or first reduced to practice by me, alone or jointly with others, prior to my employment or consultancy with the Company that I desire to remove from the operation of the Proprietary Information and Inventions Agreement entered into between the Company and me, dated the date hereof.

No inventions or improvements.

Any and all inventions regarding: _____

_____

_____

Additional sheets attached.

Due to confidentiality agreements with a prior or current employer, I cannot disclose certain inventions that would otherwise be included on the above-described list.

I propose to bring to my employment or consultancy the following materials and documents of a former employer:

No materials or documents.

The following: _____

_____

_____

Dated: 3/17/11

NAME

221135 02                                  6

# EXHIBIT "B"

Lindsay Carroll
6148 Torrey Pines Drive
Larkspur, CO, 80118
720-218-4148
carroll.lindsay@hotmail.com

Monday, February 25th, 2013

Charles Oster
Vice President, Local Enterprise
Mywedding.com
4700 Castleton Way
Castle Rock, CO, 80109

Dear Charles:

I would like to inform you that I am resigning from my position as Advertising Consultant for
Mywedding.com, effective March 8, 2013.

Thank you for all the opportunities, memories, and overall faith you have had in me. Your
coaching has helped me to develop skills on both a professional and personal level. I can't thank
you enough for making me feel like a "family" member during my last two years here. I have
enjoyed working for mywedding.com and appreciate the support that you all provided me during
my tenure with the company.

Sincerely,

Lindsay Carroll

# EXHIBIT "C"

# Ogletree Deakins

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

*Attorneys at Law*

1735 Market Street, Suite 3000
Philadelphia, PA 19103
Telephone: 215.995.2800
Facsimile: 215.995.2801
www.ogletreedeakins.com

Paul Lancaster Adams
pladams@ogletreedeakins.com

October 8, 2013

**Via Certified Mail, Return Receipt Requested**

Lindsay M. Carroll
2007 Chestnut Street, Apt. C7
Philadelphia, PA 19103

RE:   **MyWedding, LLC v. Lindsay M. Carroll**

Dear Ms. Carroll:

This firm represents your former employer, MyWedding, LLC (the "Company"), with respect to its potential claims against you. Please direct any future communications to me.

As you are aware, you signed an Employment Agreement with the Company on March 14, 2011 (the "Agreement"). This Agreement obligated you, among other things, not to, directly or indirectly, compete against the Company for one (1) year after the cessation of your employment with the Company:

> 11. During the term of my employment by or consultancy with the Company and for one (1) year after my employment by or consultancy with ceases for any reason other than because of the Company's financial hardship, I will not, without the Company's prior written consent, directly or indirectly be employed by or involved with any business developing or exploiting any products or services that are directly and materially competitive with products or services (a) being commercially developed or exploited by the Company during my employment or consultancy and (b) on which I worked or about which I learned Proprietary Information during my employment by or consultancy with the Company.

> 12. During the term of my employment by or consultancy with the Company and for one (1) year after my employment or consultancy ceases, I will not personally or through others (a) recruit, solicit or induce in any way any employee, advisor or consultant of the Company to terminate his or her relationship with the Company, or (b) solicit any client or customer of the Company to become clients or customers of another entity or association directly competitive to the business in which the Company is now involved or becomes involved.

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas ▪ Denver
Detroit Metro ▪ Greenville ▪ Houston ▪ Indianapolis ▪ Jackson ▪ Kansas City ▪ Las Vegas ▪ Los Angeles ▪ Memphis
Miami ▪ Minneapolis ▪ Morristown ▪ Nashville ▪ New Orleans ▪ New York City ▪ Orange County ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh
Portland ▪ Raleigh ▪ Richmond ▪ St. Louis ▪ St. Thomas ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Stamford ▪ Tampa ▪ Torrance ▪ Tucson ▪ Washington

Ms. Lindsay Carroll
October 8, 2013
Page 2



In the Agreement, you also expressly agreed not to disclose the Company's confidential information including without limitation trade secrets and business information, outside the course and scope of your employment with the Company. I enclose a copy of the Agreement for your convenience.

Apart from and in addition to your contractual obligations, Pennsylvania common law prohibits you from disclosing confidential information or other trade secrets entrusted to you during your employment with the Company as a consequence of your position with the Company, including, by way of illustration and without limitation, any and all records, notes, memoranda, data, systems, formulas, patents, models, devices, programs, computer software, writings, research, personnel information, plans, methods, customer lists, pricing materials and policies, marketing techniques, training programs, systems and operating procedures, billing and usage reports, or any other information of whatever nature in the possession or control of the Company which has not been published or disclosed to the general public, or which gives the Company an opportunity to obtain an advantage over competitors who do not know of or currently use such confidential information. Given your intimate knowledge of the Company's confidential and proprietary information, it is inevitable under the law that you will use the Company's confidential information to its detriment if you compete against the Company or solicit its clients in violation of the Agreement.

We understand that you are currently employed in the Philadelphia, Pennsylvania area by a direct competitor of the Company, WeddingWire.com. Based on your current employment, we believe that you are either competing directly against the Company and/or making plans to engage in such competition, in direct violation of the Agreement. **You are hereby demanded to immediately cease and desist from any activity in violation of the Agreement or Pennsylvania common law. Should you engage in any such conduct, the Company intends to enforce its rights relating to confidentiality and wrongful competition to the fullest extent of the law.** The Company will vigorously pursue all legal remedies against you, including obtaining the issuance of injunctive relief and the recovery of monetary damages, attorneys' fees, and costs.

Accordingly, you may not destroy, delete, or otherwise dispose of any documents (hard copies or electronic copies) in your possession or control that may relate to these potential claims. Such documents include those relating to your employment at the Company, the Company's clients, or your communications with anyone at the Company.

Nothing in this letter should be construed as waiving the Company's right to take immediate legal action based on information known to date or learned subsequently. Furthermore, the Company reserves the right to enforce all provisions of the Agreement and not just those pertaining to your contractual promises not to compete against the Company or disclose its confidential information.

Please contact me upon receipt of this letter should you desire to discuss this matter. If you are represented by counsel, please provide this letter to your attorney and let him or her know to contact me.

Ms. Lindsay Carroll
October 8, 2013
Page 3



I appreciate your cooperation and prompt attention to this matter.

Very truly yours,

Paul Lancaster Adams

PLA:levg

Enclosure

cc:     WeddingWire, Inc.